Mastin v. Grimes.

MASTIN, *Appellant*, v. GRIMES.

1. **Contract for Sale of Land:** SPECIFIC PERFORMANCE: MEMO-RANDUM. A memorandum of a contract for the sale and conveyance of land, although signed only by the party to be charged, when sufficiently clear and certain in its terms, affords a competent basis for a suit for specific performance.

2. —— : —— : ——. Where the memorandum stated that the residue of the purchase money " is to be paid as soon as abstract to said lots can be examined," the abstract to be furnished by the vendor, the law would imply that after the examination of the abstract, a reasonable time was to be allowed the vendee in which to make the payment.

3. —— : REASONABLE TIME. What is such reasonable time is dependent on the circumstances of the case and largely on the conduct of the contracting parties.

4. —— : TIME : WAIVER. Time is not generally deemed in equity to be of the essence of the contract for the sale and conveyance of land. And even if by express terms a day of payment be fixed and time is declared to be of the essence of the contract, still that is no bar to the time of payment being postponed or to its being waived altogether.

5. —— : —— : ——. If, after the expiration of the time limited for the performance of the contract, the parties continue to deal together or to treat the contract as still existing, this will amount to a waiver of the element of time.

6. —— : NOTICE TO COMPLETE CONTRACT. Where either the vendor or the vendee has improperly and unreasonably delayed in complying with the terms of an agreement for the sale and conveyance of land, the other party may by notice fix the time within which the contract may be completed, but such notice must allow a reasonable length of time for the other party to perform his part of the contract, and if it fail in this respect it may be disregarded.

7. —— : ——. A notice given by the vendor to the vendee to complete the contract within five days held insufficient under the circumstances in this case.

8. **Vendor and Vendee :** WAIVER. Where it is obvious from the statements of the vendor that he will not fulfill his part of the con-

Mastin v. Grimes.

tract, all necessity of tendering the purchase money and demanding a deed are waived.

9. ———: CLOUD ON TITLE. Where the delay on the part of the vendee is occasioned by facts which throw a cloud on the title to the land, and which render it suspicious in the minds of reasonable men, and to any considerable extent affect the value of the property, such delay cannot afford the vendor an opportunity to rescind the contract because of the failure of the purchaser to make payment of the purchase money.

10. Specific Performance : ACTION BY VENDEE : DEFENCE. In an action by a vendee for the specific performance of a contract for the sale and conveyance of land, the vendor set up as a defence that the plaintiff for the purpose of preventing a compliance with the terms of the contract on his part, had falsely and fraudulently pretended that defendant's title to the land was imperfect. *Held*, that the failure of the vendor to rescind the contract and to return or to offer to return the portion of the purchase money which he received was a bar to said defence.

*Appeal from Jackson Circuit Court.*—HON. F. M. BLACK, Judge.

REVERSED.

*Karnes & Ess* and *C. O. Tichenor* for appellant.

(1) By the contract sued on, plaintiff had an admitted right to the land ; he did not by consent give up that right and if it is lost it must be by such conduct on his part as will make it inequitable if not fraudulent to assert it. (2) Time is not ordinarily of the essence of a contract. Waterman on Spec. Per., sec. 460; Pomeroy on Spec. Perf., sec. 371; *Smith v. Lawrence,* 15 Mich. 501 ; *McKay v. Carrington,* 1 McLean, 59 ; *Hubbell v. Von Schoening,* 49 N. Y. 330 ; *Jones v. Robbins,* 29 Me. 351 ; *Scarlet v. Stein,* 40 Md. 525 ; *Miller v. Miller,* 25 N. J. Eq. 368 ; *Pritchard v. Todd,* 38 Conn. 414 ; *Snowman v. Hartford,* 55 Me. 199 ; *Seton v. Slade,* 7 Vesey, 274 ; *Calcroft v. Roebuck,* 1 Ves. 224 ; *Woodward v. Van Hoy,* 45 Mo. 301. (3) Notice that the contract would be cancelled if the contract was not

completed within five days was unreasonably short. *Hubbell v. Von Schoening*, 49 N. Y. 331; *Thompson v. Dulles*, 5 Rich. Eq. 370; Pomeroy on Spec. Perf., sec. 395; *Banks v. Burnham*, 61 Mo. 76. (4) The attachments on the land not only affected its market value, but exposed the owner to litigation, and this afforded a reasonable excuse for delay on plaintiff's part. *Hymers v. Branch*, 6 Mo. App. 315; *Socket v. Mason*, 31 Mo. 57; *Snyder v. Spaulding*, 57 Ill. 486; *Thompson v. Dallas*, 5 Rich. Eq. 370. (5) No deed was ever tendered plaintiff; none was ever executed. To have rescinded the contract he must have tendered a deed. *Bruner v. Wheaton*, 46 Mo. 367. (6) The part of the purchase money paid is still retained by defendant and he could not rescind without tendering it back. *Sanborn v. Batchelder*, 51 N. H. 434; *Guckenheimer v. Angvine*, 81 N. Y. 396. (7) Defendant by his conduct admitted the validity of the contract after the five days notice and thereby destroyed the effect of the latter. *Mix v. Balduc*, 78 Ill. 217: *Murrell v. Goodyear*, 62 Eng. Ch. 450. (8) The receipt given in this case is a sufficient memorandum. Reed on Stat. Fr., sec. 329; Pomeroy on Spec. Per., sec. 85 and note; Waterman on Spec Per.; sec. 235; *Fulton v. Robinson*, 55 Texas, 401; *Cossack v. Descoudres*, 1 McCord 425 (side page); *Welch v. Bayoud*, 21 N. J. Eq. 186; *Westervelt v. Matheson*, 1 Hoff. Ch. 37; *Ellis v. Deadman's Heirs*, 4 Bibb. 466; *Barickman v. Kuykendall*, 4 Blackf. 21. (9) This receipt shows a mutuality of agreement, and it is sufficient when signed by the party sought to be charged. It is not optional or unilateral in its character, and if signed by both parties would be mutual as to remedy. Reed on Stat. Fr., secs. 361, 365; Pomeroy on Spec. Per., sec. 75 and note, also sec. 170; Waterman on Spec. Per., sec. 239 and note; *Glason v. Bailey*, 14 Johns. 489; *Ivory v. Murphy*, 36 Mo. 534; *Bean et al. v. Valle et al.*, 2 Mo. 126; *Luckett v. Williamson*, 37 Mo. 388.

Mastin v. Grimes.

*Boggess & Moore* for respondent.

(1) Each action for the specific performance of a contract for the sale and conveyance of land must rest on its own peculiar facts. (2) Every such case is addressed to the sound judicial discretion of the chancellor to be granted or refused according to the very right of the case. (3) Time may by the terms of the agreement be made of the essence of the contract and to be strictly attended to, or it may be made so by subsequent notice. Waterman on Spec. Perf., secs. 6, 465 ; Pomeroy on Spec. Per., secs. 395-6-7 ; *Taylor v. Brown*, 2 Beav. 180 ; 5 Law Rep. 527 ; 10 Law Rep. 287 ; *Fuller v. Hovey*, 2 Allen, 324 ; *Taylor v. Williams*, 45 Mo. 80 ; *O' Fallon v. Kennerly*, 45 Mo. 124 ; Waterman on Spec. Perf., secs. 458-9-460 ; Story on Equity, 736-750. (4) Where the contract is unilateral—only one party signing and bound thereby—and remains entirely executory—the court will not decree specific performance at the suit of the party not bound where he is in default. *Jones v. Noble*, 3 Bush, 694 ; Bispham's Equity, sec. 377, note 11 ; Fry on Spec. Per., sec. 721-733 ; *Kerr v. Purdy*, 51 N. Y. 629 ; *Marble Co. v. Ripley*, 10 Wall. 339-57 ; *Maughlin v. Perry*, 35 Md. 352 ; *Beach v. Dyer*, 93 Ill. 295-301 ; *Iglehart v. Gibson*, 56 Ill. 85 ; *M' Cah v. Rozier*, 69 Ill. 501-502 ; *Phelps v. Railroad*, 63 Ill. 463-469 ; *Magoffin v. Holt*, 1 Duvall [Ky.] 95 ; *Hoyt v. Tuxbury*, 70 Ill. 331-338 ; *Fessler's Appeal*, 75 Pa. St. 498. (5) It is believed that imperfection of title will not avail the vendee in such cases, as at most where he is not bound, whether he will trade or not is purely optional, and his option depends upon a strict compliance with the terms of the option. *Taylor v. Williams*, 45 Mo. 80 ; *Jones v. Noble*, 3 Bush, 694 ; *Kerr v. Purdy*, 51 N. Y. 629 ; *Maughlin v. Perry*, 35 Md. 352-7. (6) If in any case the vendee has a right to object to

title, and delay performance on that account, his objec-
tions must be substantial and real, not captious or fan-
ciful. *Hymers v. Branch*, 6 Mo. App. 511–14. (7) The
vendor is not bound in all cases to restore the deposit
paid, and surrender other things received by him
by reason of the agreement to sell, as conditions
precedent to rescission ; at the most he is only bound to
put himself in such attitude that he cannot himself en-
force performance. *Staley v. Murphy*, 47 Ill. 241–4.
(8) But this is not a case of rescission—there was no
contract that respondent could have enforced—his only
purpose or right was to terminate his own liability to
perform ; this he had a right to do by the notice read
in evidence—placing his adversary clearly in default.
Waterman Spec. Per., sec. 465, *et seq.* ; Pom. Spec. Perf.,
395, and other authorities *supra.* If specific performance
be not decreed, appellant is not without remedy if he is
damaged. He still has his action at law for damages.

*John K. Cravens* also for respondent.

(1) A bill for specific performance of a contract for
the conveyance of land will not be enforced unless there
is mutuality of remedy on the contract when the bill is
filed. *Mason v. Payne*, 47 Mo. 517 ; *Tull v. David*,
45 Mo. 414 ; 1 Chitty on Contracts, 11 and 16 ; 1 Sugden
on V. & P. 196 ; 1 Parsons on Contracts, 449 ; *Moss v.
Green*, 41 Mo. 389 ; *Lewis v. Ins. Co.*, 61 Mo. 534; *Mers
v. Franklin*, 68 Mo. 129 ; *Jones v. Noble*, 3 Bush, 694 ;
*Bodine v. Glading*, 21 Pa. St. 50 ; *Sturgis v. Galindo*,
59 Cal. 28 ; *Smith v. Reynolds*, 8 Fed. Rep. 696 ; *Rich-
ardson v. Hardwick*, 106 U. S. 252. (2) In all unilat-
eral contracts, depending for consideration upon the
performance of a stipulated condition, performance is a
condition precedent, time is of the essence of the con-
tract, and the promisee must perform within the period
limited, or the contract does not bind. Waterman on
Spec. Perf., sec. 434; *Magoffin v. Holt*, 1 Duvall, 95 ;

*Jones v. Noble*, 3 Bush, 694; *Vassault v. Edwards*, 43 Cal. 458; 2 Leading Cases in Equity [4 Am. Ed.] 1129; *Mason v. Payne*, 47 Mo. 517–520. (3) In the class of contracts like the one under consideration, which for want of mutuality are designated "unilateral," the obligation of the party making the same is revocable at his will at any time before performance or offer to perform by the other. Waterman on Spec. Perf., sec. 134; Fry on Spec. Perf., sec. 178–180; *Perkins v. Hadsell*, 50 Ill. 216; *Vassault v. Edwards*, 43 Cal. 458; *Weaver v. Wood*, 9 Barr [Pa.] 221; *Railroad v. Bartlett*, 3 Cush. 234. (4) If one of two parties concerned in a contract respecting lands gives the other notice that he does not hold himself bound to perform and will not perform, the contract between them and the other contracting party to whom the notice is so given, makes no prompt assertion, within the time so fixed, of his right to enforce the contract, equity will consider him as acquiescing in the notice, and abandoning any equitable right he might have had to enforce the performance of the contract. 2 Leading Cases in Equity [4 Am. Ed.] 1056, 1061, 1135; *Routledge v. Grant*, 4 Bing. 653; *Kirby v. Harrison* 2 Ohio St. 326.

SHERWOOD, J.—Plaintiff seeks specific performance of an agreement in these words:

"KANSAS CITY, Mo., April 13, 1881.

"Received of D. C. Mastin ten dollars, being part purchase money for fifty feet by one hundred and thirty-two feet on the northwest corner Eighteenth and Cherry streets; also twenty-five feet by one hundred and thirty-two feet on the southwest corner Eighteenth and Cherry streets, Kansas City, Missouri, the balance being thirty-six hundred and ninety dollars ($3690), to be paid as soon as abstract to said lots can be examined. Abstract to be furnished by William B. Grimes.

"WM. B. GRIMES,

"BY L. F. RIEGER, Agent."

The defence was "that the plaintiff on examination of said abstract falsely and fraudulently, and for the purpose of avoiding compliance with said memorandum, paying the balance of said purchase money and accepting a deed from defendant for said real estate, pretended the defendant's title to said real estate to be imperfect."

I. This agreement, though unilateral or "one-sided," because signed by only one of the parties thereto, is still such an one as will be specifically enforced in equity, the statute only requiring that the memorandum which takes the case out of its operation be signed "by the party to be charged therewith, or some other person by him thereto lawfully authorized." R. S., sec. 2513.

The ruling of courts of equity in this respect constitutes an exception to the principle which requires mutuality in agreements which are to form bases for specific performance. At one time the correctness of this view of the subject was denied. *Lawrenson v. Butler*, 1 Sch. & Lef. 13; *Armiger v. Clarke*, Bunb. 111. Chancellor Kent seems by his intimations in the cases of *Parkhurst v. Van Cortland*, 1 Johns. Ch. 282; *Benedict v. Lynch*, *Ib.* 370, to have favored the ruling made by Lord Redesdale in the case first cited, that both parties to the agreement must be bound or else neither would be; but in a later case, *Clason v. Bailey*, 14 Johns. 484, having occasion to review his former opinion, Chancellor Kent found it to be erroneous and admitted that the point was too well settled the other way to be questioned. To the like effect are: Fry on Spec. Perf., secs. 295–346, and cases cited; Waterman on Spec. Perf., sec. 201, and cases cited; *McCrea v. Purmort*, 16 Wend. 460; *Hunter's case*, 1 Edw. Ch. [N. Y.] 1; *Davis v. Shields*, 26 Wend. 341; *Green v. Richards*, 23 N. J. Eq. 32. There are some modern authorities to be found to the contrary of the position here announced; but the great current of authority flows in the direction

above indicated. The memorandum being signed by the party to be charged, and being sufficiently clear and certain affords a competent basis for specific · performance. There are in this case other questions yet remaining to be discussed.

II. It will be observed that the agreement in question does not specify when the payment of the residue of the purchase money is to occur. The words are : "To be paid as soon as abstract to said lots can be examined. Abstract to be furnished by Wm. B. Grimes." From this the law would imply that after the examination of the abstract a reasonable time was to be allowed the vendee to make payment. But what is a reasonable time is dependent on the circumstances of each case, and largely on the conduct of the contracting parties. Time is not generally deemed in equity to be of the essence of the contract. And even if by the express terms of the contract a day of payment be fixed and time declared to be of the essence of the contract, still this is no bar to the time of payment being postponed, or to this essential element being altogether waived. And if after the expiration of the time limited the parties continue to deal together or to treat the contract as still existing this amounts to a waiver. 1 Story on Eq. Jur., sec. 776 ; *Melton v. Smith*, 65 Mo. 315 ; *Mix v. Balduc*, 78 Ill. 217. Here, the deed to the defendant was executed on the fifth day of September, 1878, by John J. Mastin, then the owner of the premises in question, and between the time of the execution of the deed, and of its being put to record, which occurred on the thirteenth of the same month, several writs of attachment were levied on the property in question and on other tracts, some as early as the tenth of the month, as the property of John J. Mastin. The property described in the memorandum was taken by defendant for a claim against the Mastin Bank, which had then recently failed. Jno. J. Mastin and Thos. H. Mastin, brothers, owned the bank and defendant took the prop-

erty in lieu of one thousand and five hundred dollars, which he had deposited in that bank. He also took from Jno. J. Mastin deeds for other tracts in the vicinity in payment of similar claims.

When the abstract came to be examined, which it seems was April 16, 1831, the fact of the levies of these various writs of attachments on the property, prior to the recording of the deed, became apparent and caused objections on account of them to be made by the counsel of plaintiff. The evidence satisfies me that thereupon an agreement was entered into between the parties to remove these attachment liens. This is established by direct evidence and by the acts of the parties. Certain it is that defendant and his agent immediately set to work very actively to remove the attachment liens, and from time to time reported progress to the plaintiff or his agent of the release of these liens. On September 5, 1881, before all the attachments were released the defendant gave the following notice :

"KANSAS CITY, Mo., September 5, 1881.
"*D. C. Mastin, Esq.*—

"DEAR SIR : You are hereby notified that unless you consummate contract made with me, through my agent, L. F. Rieger, for the sale to you of fifty feet by one hundred and thirty-two feet, on northwest corner of Eighteenth and Cherry streets ; and twenty-five feet by one hundred and thirty-two feet on southwest corner Eighteenth and Cherry streets, Kansas City, Missouri, within five days from the date hereof by paying balance of purchase money, three thousand six hundred and ninety dollars, and accepting warranty deed from me therefor, pursuant to contract of April 13, 1881, made by said agent Rieger, I shall refuse to comply with said contract, but will declare same cancelled. I am ready and willing and hereby offer to make and deliver to you such a deed at any time within five days from the date

hereof. At the end of that time said contract is hereby terminated.

"WILLIAM B. GRIMES."

Counsel for defendant advised that ten days notice of the intended cancellation of the contract be given, but defendant insisted on giving the shorter notice and this was done. In the circumstances of this case, and considering the agreement made to have the attachment liens released, and considering that this was not entirely accomplished for about six weeks after the service of the notice, the time given to plaintiff thereby in which to comply with the agreement was altogether too short, regardless of the agreement to release the attachment liens. The shortest time to be found in the books ever given in such cases was one week, and it was given in a case somewhat similar to the one at bar, and it was held too short a period. *King v. Wilson,* 6 Beav. 124. In *Hubbell v. Von Schoening,* 49 N. Y. App. 331, the court say: "It was assumed by the learned judge on the trial, that one of the parties could, by notice to the other, make time of the essence of the contract, when, by its terms, it was not made so. This may be questionable, but need not be considered. The party in such case, if the operation and effect of the contract are to be essentially changed, so as to vary his rights or duties at the volition of the other, should have reasonable notice in advance of the time when he will be called upon to act." In *Thompson v. Dulles,* 5 Rich. Eq. [S. C.] 370, the court say: "It is said where no time is fixed in the contract, or time is not essential, it will not, however, be permitted to the party who is to make the conveyance to trifle with the interests of the opposite party by unnecessary delay; it is in the power of the latter to fix some reasonable time, not capriciously or with intent to surprise, but a reasonable time according to the circumstances of the case, within which he will expect the title to be made at the peril of re-

scinding the agreement." And a notice on December 23, that unless good title was tendered by January 1, the purchaser would consider the contract at an end was held unreasonable.

Pomeroy on Specific Performance, section 395, says : "If either the vendor or the vendee has improperly and unreasonably delayed in complying with the terms of the agreement, on his side, the other party may, by notice, fix upon and assign a reasonable time for completing the contract, and may call upon the defaulting party to do the acts to be done by him or any particular act within this period." Sec. 396 : "The notice cannot be an arbitrary and sudden termination of the contract; it cannot put an immediate end to a pending dispute or negotiation as to the title ; it must allow a reasonable length of time for the other party to perform, and if it fails in any of these respects it may be disregarded and will produce no effect 'upon the equitable remedial rights of the party to whom it is given. The nature and object of the contract, the circumstances of the case, and the previous conduct of the parties are important, and, indeed, controlling elements in determining the reasonableness of the notice."

Waterman on Specific Performance, section 465 : "Although no time is fixed in the contract, a party will not be permitted to trifle with the interests of the opposite party by unnecessary delay ; and the latter may designate some reasonable time, not capriciously, or unreasonably, or for the purpose of surprising the other and thus getting clear of a bargain, but a reasonable time according to the circumstances of the case, within which he will expect performance or that the agreement will be rescinded." See cases referred to in this section. See also *Murrell v. Goodyear*, 62 Eng. Ch. [1 DeG., F. & J.] 450. Parsons on Contracts, vol. 2 [5 Ed.] 662, says : "That is a reasonable time which preserves to each party the rights and advantages he possesses and

protects each party from losses that he ought not to suffer.''

In two other cases cited by plaintiff's counsel, a notice of intended rescission of the contract, in the one case of fourteen and the other of thirty days, was held unreasonable. In the light of these authorities, the notice served on plaintiff must be held wholly insufficient in point of time, and it should be thrown out of consideration on that account, and owing to the situation in which the parties had been placed in consequence of the then uncompleted agreement in reference to releasing the attachment liens.

About October 1, 1881, when these liens had been released, the agent of plaintiff saw the defendant again about the matter and wished to complete the contract, and offered to do so, but was met by the defendant with the reply that the contract was at an end. In the early part of January, 1882, a formal demand of a deed was made upon defendant, accompanied by a tender of the balance of the purchase money, but defendant refused to receive the money or to make the deed. The tender of the purchase money may really be regarded as having been made as early as October 1, 1881, and this was about the time the attachment liens were released, because where it is obvious, from the statements of the vendor, that he will not fulfill his part of the contract, all necessity of tendering the purchase money and demanding a deed are waived. *White v. Dobson,* 17 Gratt. 262; *Brown v. Eaton,* 21 Minn. 409; *Matlocks v. Young,* 66 Me. 459. But certainly, in the circumstances of this case, the actual tender was soon enough when made in January, 1882, for time had been waived, and delay, if any there was, excused. Plaintiff was in no wise responsible for any delay necessary to enable him to secure a title free from apparent blemish, and this is especially so where the delay is the result of the concurrence of the parties in interest. But aside

from this view, aside from any agreement to remove the liens, it is sufficient if the delay is occasioned by facts which throw a cloud on the title and render it suspicious in the minds of reasonable men, and to any considerable extent affect its value. The delay in such a case cannot afford the vendor an opportunity to rescind because of the failure of the purchaser to make payment. *Snyder v. Spaulding*, 57 Ill. 480.

"Every purchaser of land has a right to demand a title which shall protect him from anxiety, lest annoying, if not successful, suits, be brought against him, and probably take from him, or his representatives, land upon which money was invested. He should have a title which would enable him not only to hold his land, but to hold it in peace, and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value." Waterman Spec. Perf., sec. 412, and cases cited.

But there are other views which are fatal to the defence of the defendant, and they are the failure of the defendant to rescind the contract promptly. *Melton v. Smith, supra;* and his failure, also, to return, or offer to return, the portion of the purchase money which he had received. *Snyder v. Spaulding, supra; Sanborn v. Batchelder*, 51 N. H. 434; *Guckenheimer v. Angevine*, 81 N. Y. 396. And it matters not that the amount retained was small, the principle involved is not affected thereby.

For these reasons the judgment should be reversed and the cause remanded. All concur, except Black, J., not sitting.