FRITZ W. WIEMANN, Appellant, v. C. J. STEFFEN, Respondent.

**St. Louis Court of Appeals, January 5, 1915.**

1. **REAL ESTATE: Contracts for Sale: Implied Covenants.** The law implies that one selling land shall furnish a good title, and a "good title" means a "marketable title."

2. **———: ———: ———: Marketable Title: Title Under Statute of Limitations.** If a contract for the sale of land specifically provides for a title of a particular kind and character, as a title shown of record, or by means of an abstract, a title so evidenced must be given; but if the contract is to furnish a good and marketable title, free from defects, it is complied with by tendering a good title by adverse possession under the Statute of Limitations.

3. **———: ———: ———: "Marketable Title."** An agreement, in a contract for the sale of land, to furnish a marketable title, free from defects, contains no implied covenant that the title will be such as the purchaser will be willing to accept or such as his attorney may pronounce good and marketable; a "marketable title" being one which a reasonable purchaser, well informed as to the facts and their legal bearings, willing and anxious to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear upon such transactions, be willing and ought to accept.

Appeal from Montgomery Circuit Court.—*Hon. James
D. Barnett,* Judge.

AFFIRMED.

*Avery, Young, Dudley & Killam* and *Nowlin &
Hughes* for appellant.

(1) The title tendered the plaintiff by the defend-
ant by the deed was not a marketable title. Birge v.
Bock, 44 Mo. App. 69; Thompson v. Dickerson, 68
Mo. App. 535; Simmons v. McIlroy, 73 Am. State 677;
Simon v. Vandeveer, 63 Am. State 688; Moore v. Wil-
liams, 115 N. Y. 586; Vol. 26 Cyc., page 808; Zurke v.
Kuehn, 113 Wis. 421. (2) The respondent by his false
affidavit showing the fact that Alice Creech, who after-
ward married Story, was living at the time of the death
of the mother, Leana Creech, cannot gain an advantage.
Dorrance v. Dorrance, 165 S. W. 786; Crane v. Murry,
106 Mo. App. 280; Gordon v. Bruner, 49 Mo. 570. (3)
The respondent in failing and refusing to give appel-
lant the possession of the buildings on the 2nd day of
March, 1911, was in default and the appellant had the
right to rescind for this reason. (4) The construction
placed upon the contract by the conduct of the parties
shows that an abstract title was to be furnished, there-
fore proof of title by adverse possession would be
eliminated. 173 Mo. App. 666; Ives v. Kimlin, 140
Mo. App. 293; Austin v. Shipman, 160 Mo. App. 206.

*Frank Howell* and *R. L. Sutton* for respondent.

(1) The title tendered plaintiff by defendant was
a "marketable title," as that term is defined by the
courts. Kling v. Realty Company, 166 Mo. App. 195;
Summy v. Ramsey, 53 Wash. 93; Scannell v. American
Soda Fountain Company, 161 Mo. 619; Adkinson v.
Taylor, 34 Mo. App. 452. (2) A title based upon the
Statute of Limitations is a good and marketable title,

and one which the purchaser has no right to reject, where the contract does not expressly require the title to be evidenced by the records. Scannell v. American Soda Fountain Company, 161 Mo. 617; Long v. Lackawana Coal & Iron Company, 233 Mo. 713; Pratt v. Eby, 67 Pa. 396; Hedderly v. Johnson, 42 Minn. 443; Mitchner v. Holmes, 117 Mo. 185; Kling v. Realty Co., 166 Mo. App. 190; Summy v. Ramsey, 53 Wash. 93; Rozier v. Graham, 146 Mo. 355; Mastin v. Grimes, 88 Mo. 490; Green v. Ditsch, 143 Mo. 12; Thompson v. Dickerson, 68 Mo. App. 543; St. Clair v. Hellweg, 173 Mo. App. 666. (3) The conduct of the parties in jointly procuring an abstract did not convert the contract of sale, which was a contract for a good and marketable title simply, into a contract for a good and marketable title to be shown by an abstract of the record. St. Clair v. Hellweg, 173 Mo. App. 660; Long v. Lackawana Coal & Iron Company, 233 Mo. 720, 739. (4) The interest of the Story heir, if any he had, is as effectually barred by the Statute of Limitations, as it could have been barred by deed. Scannell v. American Soda Fountain Company, 161 Mo. 617; Long v. Lackawana Coal & Iron Company, 233 Mo. 739; Hutson v. Hutson, 139 Mo. 236; Warfield v. Lindell, 38 Mo. 580; Lapeyre v. Paul, 47 Mo. 590; Warfield v. Lindell, 30 Mo. 286; Misenheimer v. Amos, 221 Mo. 371; Gray v. Ward, 234 Mo. 297; Nickey v. Leader, 235 Mo. 42; Clapp v. Bromagham, 9 Cow. 530; Gobardus v. Trinity Church, 4 Paige, 178; Town v. Needham, 3 Paige, 545; Florence v. Hopkins, 46 N. Y. 186; Baker v. Oakwood, 123 N. Y. 16, 25 N. E. 312; Sweetland v. Buell, 69 N. Y. St. 733, 35 N. Y. Supp. 346; Foulke v. Bond, 41 N. J. Law, 527; Long v. Stapp, 49 Mo. 508; Campbell v. The Laclede Gas Co., 84 Mo. 375; Hendricks v. Musgrove, 183 Mo. 301; R. S. Mo. 1909, sec. 1881. (5) The interest to which the title is disputed is so insignificant as compared with the entire tract of land involved in the contract of sale, being

only a one-thirty-second part thereof, that it would not justify a rescission of the contract of sale, even though the title to this small interest were conceded to be bad. Hart v. Hanlin, 43 Mo. 175; Luckett v. Williamson, 31 Mo. 54; 3 Parsons on Contracts, 400. (6) Time is not generally deemed to be of the essence of the contract, either at law or in equity. It is only required that neither party be permitted to abuse the matter of time to the disadvanage of the other. Scannell v. American Soda Fountain Company, 161 Mo. 621; Summy v. Ramsey, 53 Wash. 93; Carr v. Howell, 154 Cal. 372; East Jellico Coal Co. v. Carter, 30 Ky. Law, 174; Jones v. Robbins, 29 Maine, 351; Moore v. Smedburgh, 8 Paige, 600; Fulenwider v. Rowan, 136 Ala. 287; Steele v. Branch, 40 Cal. 3; Acosta v. Anderson, 56 Fla. 749; Ellis v. Bryant, 120 Ga. 890; Maris v. Masters, 31 Ind. App. 235; Sandford v. Weeks, 38 Kan. 319; Gilman v. Smith, 71 Md. 171; Boston, etc. v. Rose, 194 Mass. 142; Munro v. Edwards, 87 Mich. 112; Sylvester v. Born, 132 Pa. St. 467. (7) The court has found the issues against plaintiff, under instruction number 2 given by the court at plaintiff's request, and there is an end of the matter. Plaintiff will not be permitted to take a position here inconsistent with that taken in the court below. Berger v. St. Louis, etc., Co., 136 Mo. App. 36; Carey v. Metropolitan Street Ry. Co., 125 Mo. App. 188; Tomlinson v. Ellison, 104 Mo. 201; Smith v. Huff, 141 Mo. App. 476; Montgomery v. Wise, 138 Mo. App. 176; Jenkins v. Clopton, 141 Mo. App. 74; Crain v. Miles, 154 Mo. App. 338. (8) The failure of plaintiff to point out to defendant his objections to the title, prior to bringing his action, is a complete bar to a recovery in this case. Easton v. Montgomery, 90 Cal. 307; Kling v. Realty Co., 166 Mo. App. 194; Ashbaugh v. Murphy, 90 Ill. 182; Brewer v. Winchester, 2 Allen (Mass.) 389; Copertind v. Oppermann, 76 Cal. 181; Packard v. Usher, 7 Gray (Mass.) 529; Schmidtke v. Keller, 44 Oregon, 23;

Rightor v. Kohn, 16 La. 501; Carty v. Steam Cotton Press Co., 5 La. 16; St. Clair v. Hellweg, 173 Mo. App. 660; Scannell v. American Soda Fountain Co., 161 Mo. 614; Thompson v. Dickerson, 68 Mo. App. 535. (9) The failure of plaintiff to specify in his petition the defect in the title relied on, is fatal to his action. Pohiem v. Meyers, 9 Cal. App. 31; Axtel v. Chase, 77 Ind. 74; Duvall v. Parker, 2 Duv. (Ky.) 182; Lewis v. Morton, 5 T. B. Mon. (Ky.) 1; Latham v. Morgan, Sm. & M. Ch. (Miss.) 611; Duvall v. Parker, 2 Duv. (Ky.) 182. (10) (a) The deed from George B. East and wife to Leonah Creech and "her bodily heirs" at common law would create an estate tail special or an estate tail male. Washburn on Real Property (3 Ed.), sections 22, 23 and 26, pages 87, 88; 16 Cyc. 609 B; Tiedeman on Real Property (1 Ed.), sec. 48. (b) This estate tail male—or special—was converted by our laws into a life estate in Leannah Creech and the remainder in fee in the male heirs of her body who would have taken it under the common law at her death, or male descendants who can trace their line back to the donee through males. Wash. on Real Property (3 Ed.), sec. 33, p. 90, and sec. 37, p. 91; Tiedeman on Real Property, sec. 48; Phillips v. La-Forge, 89 Mo. 72; General Statutes Mo. 1865, sec. 4, p. 442; Farrar v. Chrysty's Admrs., 24 Mo. 453.

NORTONI, J.—This is a suit for money had and received. The money sued for came into the hands of defendant under a contract which plaintiff thereafter rescinded. The trial was had before the court without a jury, where the finding and judgment were for defendant, and plaintiff prosecutes the appeal.

It appears that plaintiff and defendant entered into a written contract concerning the purchase of defendant's farm of 238 acres in Lincoln county. By the terms of the contract, plaintiff purchased defendant's farm at the agreed price of $11,700, and paid $500

down as earnest money thereon.  It was agreed that the balance of the purchase price should be paid in part, and in part secured by plaintiff to defendant, on the first day of March, 1911, at which time the deed was to be executed by defendant and his wife and delivered to plaintiff and possession of the premises given.    It is stipulated in the written ·contract that defendant should, on that date, make and deliver to plaintiff "a general warranty deed to said lands with good and marketable title, free from all liens and defects except taxes due for the year 1911."  The controversy in the case relates to this matter, for the plaintiff insists that defendant did not tender a marketable title, whereas the court found he did.

Plaintiff paid $500 earnest money on the bargain when the contract was entered into several months before, and it appears that he was ready, able and willing to complete the purchase on March 1, 1911, and, indeed, extended the time until noon of March 2 of that year, to enable defendant to clear several defects in the title.  Although there is no stipulation in the contract requiring defendant to furnish an abstract, it appears that he did so and plaintiff's attorney examined it prior to March first.  On such examination several minor defects in the paper title were discovered and pointed out, and it appears defendant corrected all of them save one which relates to the apparent outstanding title of a one-eighth interest in sixty-five acres of the land, which title, it is said, according to the records, resides in one Joseph Story.  It appears that defendant had claimed to own the land for more than thirty-two years under a general warranty deed, and that, though he had resided thereon, cultivated it, paid the taxes, and exercised the usual acts of ownership with respect to it during that time, plaintiff objected to the title tendered because of such apparent outstanding one-eighth interest in sixty-five acres in Joseph Story.  After waiting until noon of March 2,

1911, for defendant to correct the record title with respect to this interest, plaintiff declared a rescission of the contract and demanded the return of the $500 earnest money paid, because, as he asserts, the title tendered was not good and marketable, free from all defects. On the other hand, defendant insisted the title was sufficient, when considered together with his occupancy and claim of ownership under the Statute of Limitations and, therefore, denied plaintiff's right to rescind.

The case concedes that Joseph Story derived from his grandmother, through descent, in 1896, title to a one-eighth interest in the parcel of land referred to, -consisting of sixty-five acres, and no deed from him appears. But, on the trial, the court received evidence showing that defendant's right to the identical land and interest had ripened into a complete title under the Statute of Limitations through adverse user and occupancy under claim and color of title attended with the usual indicia of ownership. But this evidence was objected to on the theory that the stipulation for a marketable title required the showing of such title by deeds or proper conveyances and excluded the idea by establishing it through user under the Statute of Limitations. Moreover, the court refused to declare the law, on plaintiff's request, to the effect that he was not obligated to accept from defendant a title resting as to any part of the land contracted for by him on the Statute of Limitations.

It is urged the court erred in its view of the law thus disclosed, in that the covenant for a marketable title, free of defects, implies a title to be shown in proper conveyances alone, and may not be satisfied through showing an absolutely good title under the Statute of Limitations. But we are not so persuaded. The law implies that one selling land shall furnish a good title and it is said that a good title and a marketable title are the same. [See Kent & Obear v. Allen,

24 Mo. 98; Kling v. A. H. Greef Realty Co., 166 Mo.
App. 190, 148 S. W. 203; 39 Cyc. 1442; 29 Am. & Eng.
Encyc. Law (2 Ed.), pp. 610, 611.] However, some-
times the parties stipulate in their contract, and it is
certainly competent for them to do so, for a title of a
particular kind and character, even where otherwise
a different character of title would be sufficient; such,
for instance, as where the contract specifically provides
that the title shall be shown of record or by means of
an abstract. In cases of that character, of course, it
is essential to comply with the condition of the contract
and show a title of record or as by an abstract, etc.
[See Thompson v. Dickerson, 68 Mo. App. 535; St. Clair
v. Hellweg, 173 Mo. App. 660, 159 S. W. 17; 39 Cyc.
1442, 1445, 1446, 1447.] But the term "marketable
title, free from defects," does not imply that no other
title than one shown in proper conveyances or of rec-
ord or revealed in an abstract from the record will
suffice. Neither is there an implied covenant in those
words to the effect that the title will be such as the
vendee will be willing to accept or that his attorney
may pronounce good and marketable. [See Green v.
Ditsch, 143 Mo. 1, 44 S. W. 799.] It is said that the
words "marketable title" mean a title which a reason-
able purchaser, well informed as to the facts and their
legal bearings, willing and anxious to perform his con-
tract, would, in the exercise of that prudence which
business men ordinarily bring to bear upon such trans-
actions, be willing to accept and ought to accept. [See
Kling v. Greef Realty Co., 166 Mo. App. 190, 195, 196,
148 S. W. 203; Todd v. Savings Institution, 128 N. Y.
636; 29 Am. & Eng. Encyc. of Law (2 Ed.), 613; 39
Cyc. 1452, et seq.] But unless the contract calls for
a record title or a title appearing in conveyances, as
by an abstract or something of that nature, a good title
by adverse possession under the Statute of Limitations
is sufficient and regarded as a marketable title. It is
said that such is the rule according to the great weight

of authority. [See 39 Cyc. 1460.] It is certainly the rule in Missouri, as will appear by reference to the decision of the Supreme Court in Scannell v. American Soda Fountain Co., 161 Mo. 606, 618, 619, 61 S. W. 889.

The law on the subject is thus stated in 39 Cyc. 1460, 1461, 1462, 1463:

"Where the contract expressly or impliedly calls for a record title, a title by adverse possession, prescription, or limitations, is not sufficient; but such a title is marketable and sufficient, according to the great weight of authority, where the contract does not call for a title of record. Where there is a possibility of an outstanding title, undisturbed possession for a long period of time renders the title marketable. The vendor must, however, clearly show that the facts are such that lapse of time gives title by adverse possession and that the title is free from reasonable doubt. He must be able to show that the adverse claimant of the property was not under such disability that the statute would not run against him, that the possession was in hostility to such owner and exclusive, and that the time prescribed by the statute has not been prolonged by any act of the parties. The parol evidence to support such a title must be such as. cannot be contradicted and will not be difficult to obtain."

In this view the court very properly received the evidence showing good title in the defendant under the Statute of Limitations and also in refusing the instructions requested by plaintiff, for it is obvious the title tendered by defendant was a marketable one free from defects.

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.*, and *Allen, J.*, concur.