## McCURDY v. GRAY et al. (No. 1931.) *

(Court of Civil Appeals of Texas. Amarillo. March 15, 1922. Rehearing Denied April 19, 1922.)

1. Vendor and purchaser ⚖️132—Contract held to require vendor to furnish abstract showing good title on face of record.

A contract requiring vendor to furnish abstract "showing a good and sufficient title of record" bound vendor to furnish an abstract showing good title upon the face of the record, and not one which must be shown good by oral proof, ex parte affidavits, or other writings not subject to registration.

2. Trusts ⚖️239—Trustees take title as tenants in common, and all must join unless part of them are dead, when survivors may convey.

When property is conveyed to trustees, they take title as tenants in common, and all must join in its conveyance unless one or more should die, in which event the survivors could act, and, where only one of five trustees signed a deed, this condition unexplained does not show sufficient record title.

3. Evidence ⚖️383(7)—Recital in deed by one trustee that he was the only one of several appointed who qualified held not conclusive.

Where testator appointed five of his children executors and trustees with power to convey land, and a deed is signed by one only, reciting that he is "the only qualified and acting executor and trustee under the will," being ex parte and unsworn, held not conclusive that none of the other trustees ever qualified or acted as such.

Error from District Court, Deaf Smith County; Reese Tatum, Judge.

Suit by J. K. Gray against C. S. McCurdy and others. Judgment in favor of plaintiff decreeing specific performance of a land sale contract, and against the defendant McCurdy, who brings error. Judgment reversed, and rendered for plaintiff in error. Motion for rehearing overruled.

Carl Gilliland, of Hereford, for plaintiff in error.

W. H. Russell, of Hereford, for defendants in error.

HALL, J. On the 17th day of September, 1920, Gray entered into a written contract with McCurdy for the sale of a certain section of land described therein. The total consideration named was $19,200, not less than $5,000 of which should be paid in cash upon the consummation of the contract or or before January 1, 1921. It was further provided that the purchaser should assume the payment of three outstanding notes against the land in the sum of $2,400 each, besides interest. The remainder of the consideration to be evidenced by notes in the sum of $1,000 each, payable annually there-

---

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted June 7, 1922.

after. The contract provides that Gray shall within 10 days from the date of the contract furnish to McCurdy "an abstract of title, certified by competent abstracter, showing a good and sufficient title of record to said lands, to be in first party, free and clear of all liens and incumbrances save and except the incumbrance assumed by the second party, and the taxes for 1920," etc. It was shown that in accordance with another term of the contract McCurdy deposited in the First National Bank of Hereford the sum of $500 as earnest money, which the contract provided should be forfeited to Gray in the event an abstract showing such a title should be provided and McCurdy should thereafter fail or refuse to consummate the deal. The contract provided that, if the title should be found defective, and could not be cured within a reasonable time, then the earnest money should be returned to McCurdy. An abstract was furnished which plaintiff in error claims did not show such a title as the contract of sale required. Upon his refusal to consummate the trade Gray filed this suit for specific performance, for judgment for the amount due under the contract, and foreclosure of the vendor's lien. The First National Bank answered, admitting that as a stakeholder it had the $500 paid by McCurdy, which it held in escrow under the contract. The defendant McCurdy admitted the execution of the contract, and alleged that he, in accordance with the terms of his agreement, had the abstract examined within 10 days after its receipt by him, that the title had been found defective, and that Gray had refused to cure the defects. He filed a cross-action against the bank, asking judgment for the $500 earnest money. He specifically charged that the abstract showed a title defective in the following particulars: (1) A regular chain of title from the state to Wm. Blomfield, who had never parted with the title; (2) the will of Blomfield, probated in England, and a certified copy thereof, probated in Deaf Smith county, Tex., on May 8, 1902; (3) the conveyance of the land in question by only one of five trustees named by Blomfield in his will; (4) that Bromfield's will authorized the trustees to sell the land, and that the sale was void because the conveyance was not executed by all or at least a majority of the trustees; (5) that one of the trustees only sold the land to E. E. Ramsey, Gray's vendor, on March 18, 1920, for $2,400 cash and three notes for $2,400 each, due one, two, and three years from date, respectively, payable to said trustee, when the will did not authorize a sale of the property on credit. The case was tried before the court without a jury, and resulted in a judgment in favor of Gray, decreeing specific performance of the contract, and against McCurdy on his cross-action.

[1] As stated above, the contract provided for an abstract "showing a good and sufficient title of record." This court held in Moser v. Tucker, 195 S. W. 259, that a record title was not such title as could be shown to be good by oral proof, ex parte affidavits, or other writings not subject to registration. We think this contract bound Gray to furnish an abstract in which the title was shown to be good upon the face of the record. In our opinion this has not been done.

[2, 3] By his will the testator, Blomfield, appointed five of his children executors and trustees, and empowered the trustees to sell and convey the land. The rule is practically universal that, when property is conveyed by an instrument to trustees, such trustees take the title as tenants in common, and all must join in a conveyance thereof, unless one or more of them should die, and in that event under the will of Blomfield their survivor or survivors could act. It does not appear from the abstract whether any of the trustees, except one, have qualified. It is contended, upon the one hand, that trustees, appointed as such by an instrument of writing, are prima facie presumed to have accepted, while, on the other hand, quite a respectable array of authorities hold to the rule that a trustee cannot be held as such until he has expressly or impliedly accepted the trust. The cases holding that acceptance is presumed may be found in 26 R. C. L. 1274, par. 124; 3 Pomeroy's Equity (4th Ed.) pars. 107 and 1060; 39 Cyc. pp. 252, 253. As supporting this rule, we find the case of Adams v. Adams, 21 Wall. 185, 22 L. Ed. 504. The authorities supporting the opposite rule are cited in Bogert on Trusts, 74; Schouler on Wills (5th Ed.) pars. 1044–1046. In support of this rule we find Armstrong v. Morrill, 14 Wall. 129, 20 L. Ed. 765. The point under consideration seems never to have been clearly and definitely passed upon by the Supreme Court of this state, unless it be in the case of Witherspoon v. T. & P. Ry. Co., 48 Tex. 309, 320, in which it is said:

"It seems to us quite evident that the powers and responsibilities given and imposed upon trustees of a sold-out railroad company by this statute could not be thrust upon them merely by reason of their being directors of the company when sold out; and therefore it must be shown in some way that they have accepted the trust thus conferred upon them, before they can be held responsible for the discharge of the duties of such trustees."

The confused condition of the law upon this question is expressed in 1 Perry on Trusts & Trustees (6th Ed.) par. 259, by the author's equivocal language, as follows:

"In voluntary or express trusts, no title vests in the proposed trustee by whatever instrument it is attempted to be transferred unless he expressly or by implication accepts the office

or in some way assumes its duties and liabilities, and, though a person may have promised or agreed beforehand to accept a trust and his name is introduced into the will, conveyance, or settlement, yet he may decline to act, and it is proper for him to do so, if he finds that his duties are different from what he conceived them to be when he entered into the agreement or if for any reason he cannot attend to the proper discharge of the office. * * * The refusal to act should be affirmatively shown, either by an express disclaimer or by such a tacit refusal to act as amounts to an express rejection, for every gift by will or deed is supposed prima facie to be beneficial to the donee, and therefore the law will presume that every gift, whether in trust or not, is accepted until the contrary is proved. Especially will this presumption prevail after a long lapse of time, as 20 years, or 34 years, if the trustee has notice and has not disclaimed, though he may have done nothing in the execution of the trust, and even where a deed was only 4 years old and the trustees knew of their appointment, and did not object, Lord St. Leonards held that they could not be allowed to say that they did not assent to the conveyance."

Under the holding of this court, in the case of Pepper v. Walling, 195 S. W. 892, the four trustees not shown by the record to have yet qualified may do so within a reasonable time. If it is necessary for us to decide the question above presented, we feel constrained to hold in accord with the Witherspoon Case, supra. It is agreed in the statement of facts that—

"No other person named in said will as executor save and except James Stone Blomfield ever qualified or attempted to qualify as such."

James Stone Blomfield and the other parties named as executors are all children of the testator, W. Blomfield. As executors it would become their duty to administer the estate, and as trustees they are empowered by the will to sell property and reinvest the proceeds. Among other recitations in the will we find this:

"And I declare that the power of appointing new trustees shall be vested in the persons hereinbefore named as my executors and trustees, and the survivors or survivor of them during their, his or her life or lives, and after their decease in my surviving child or children for the time being I declare that my said trustees and the survivors and survivor of them, or other trustees or trustee, for the time being hereof, are hereby appointed the trustees or trustee for all the purposes of the Settled Land Acts of 1882 and 1890, and also for all the purposes of section 42 of the Conveyancing and Law of Property Act, 1881."

It does not appear from the statement of facts what effect the acts referred to have upon the trustees in the execution of the trust and disposition of the property, whether their powers are extended or restricted. there is a recital in the deed to the vendor of Gray as follows:

"James Stone Blomfield, the only qualified and acting executor and trustee under the will of the late Wm. Blomfield."

—which appellee insists conclusively shows that none of the other trustees ever qualified or acted as such. When the deed was introduced, the appellant objected to this recital, and we think the objection should be sustained. It is simply an ex parte, unsworn statement by one of five possible trustees and executors, in no way binding upon them. The incorporation of such a recital in a deed and the registration of the deed adds no dignity or force to the purported statement of fact. The abstract shows the legal title to be vested in the trustees and executors, only one of whom has attempted to convey it. Unexplained, this condition of the record does not show a good and sufficient record title. There are many contingencies which might intervene and could be shown by parol which would in effect defeat the title. In order to decide the question presented, we are not required to indulge in presumptions either for or against the acceptance of the trust or the validity of the conveyance of James Stone Blomfield. Any presumptions in which we might indulge upon any phase of the question would be rebuttable. We think we are required to go no further than to hold that the abstract upon its face does not show a good and sufficient record title.

It becomes unnecessary to pass upon the remaining assignments.

The judgment is reversed, and rendered for appellant.

On Motion for Rehearing.

As requested in the motion, we find the additional facts:

(a) That upon the application of James Stone Blomfield, one of the executors and trustees named in the will of William Blomfield, alone, the said will and certificates were probated in Deaf Smith county, Tex., and the record shows that no one else ever qualified as executor or attempted to so qualify in Deaf Smith county, or at any other place.

(b) That the said will was duly probated in England and a certified copy of the will and probate was duly probated in Deaf Smith county, Tex., and said will and probate proceedings in Deaf Smith county, Tex., were duly shown in said abstract.

The motion for rehearing is overruled.